OA 91 Criminal Complaint

# United States District Court

**NORTHERN** DISTRICT OF **CALIFORNIA**



FILED
AUG 11 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
ABRAHAM MARTINEZ

CRIMINAL COMPLAINT

Case Number:

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about **June 19, 2008** (Date) in **San Francisco** County, in the **Northern** District of **California** defendant(s) did,

(Track Statutory Language of Offense)

See Attachment A

in violation of Title _____ United States Code, Section(s) _____.

18 U.S.C. Secs. 1959(a)(3) and 2 (Assault with a Dangerous Weapon in Aid of Racketeering)
18 U.S.C. Secs. 1959(a)(5) and 2 (Attempted Murder in Aid of Racketeering)

I further state that I am a(n) **Special Agent of ICE** and that this complaint is based on the following facts:

See Attachment B

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

Approved As To Form  **W.S. Wilson Leung**
                      AUSA

BRIAN L. GINN
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

August 11, 2008          at  San Francisco, California
Date                         City and State

HON. JOSEPH C. SPERO    U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer             Signature of Judicial Officer

# ATTACHMENT A

## Count One (Assault with a Dangerous Weapon in Aid of Racketeering)

1. At all times relevant to this Complaint, La Mara Salvatrucha, also known as "MS-13," including its leadership, its membership, and its associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. At all times relevant to this Complaint, MS-13, through its members and associates, engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), including acts involving murder, attempted murder, narcotics trafficking, and extortion.

3. On or about June 19, 2008, in the Northern District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **ABRAHAM MARTINEZ**, a/k/a "Goofy," unlawfully, knowingly, and intentionally did assault a male victim with a dangerous weapon, in violation of California Penal Code Sections 245(a)(1) and 31.

All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## Count Two (Attempted Murder in Aid of Racketeering)

1. At all times relevant to this Complaint, La Mara Salvatrucha, also known as "MS-13," including its leadership, its membership, and its associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. At all times relevant to this Complaint, MS-13, through its members and associates, engaged in racketeering activity as that term is defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), including acts involving murder, attempted murder, narcotics trafficking, and extortion.

3. On or about June 19, 2008, in the Northern District of California, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **ABRAHAM**

**MARTINEZ**, a/k/a "Goofy," unlawfully, knowingly, and intentionally did attempt to murder a male victim, in violation of California Penal Code Sections 187, 188, 189, and 664.

All in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## ATTACHMENT B

## AFFIDAVIT OF BRIAN L. GINN

I, BRIAN L. GINN, Special Agent with Immigration and Customs Enforcement, being duly sworn, do declare and state:

### I. INTRODUCTION

1. I am a Special Agent with Immigration and Customs Enforcement ("ICE") and have been so employed since 2004. I am presently assigned to ICE's San Francisco office, where I am currently assigned to the ICE Operation Community Shield Gang Unit. As part of my duties within this unit, I investigate violations of federal law, to include violent crimes and crimes committed by street gangs.

2. This Affidavit is made in support of a Criminal Complaint charging **ABRAHAM MARTINEZ**, a/k/a "Goofy," with: (a) Assault with a Dangerous Weapon in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2; and (b) Attempted Murder in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for an arrest warrant, I have not included each and every fact known to me that supports probable cause for arrest. Rather, I have set forth only the facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.

4. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

### II. BACKGROUND: LA MARA SALVATRUCHA

5. Based on my experience, training, investigation and conversations with other law enforcement officers, I know that at all times relevant to this Complaint, La Mara Salvatrucha, also known as "MS-13," is a street gang that was formed in Los Angeles, California, during the 1980s. MS-13 members principally are of El Salvadoran background, although many members have roots in other countries, such as Honduras and Guatemala. MS-13 has local gangs, or "cliques," located throughout the world. I know that there is an MS-13 clique in San Francisco, California, which is centered on 20th Street in the Mission District, the members of which call themselves "20th Street" or the "20th

1

Street Clique." From my time investigating MS-13 as part of my assignment to the ICE Operation Community Shield Gang Unit, I know that many members of the 20th Street Clique are personally known to members of the San Francisco Police Department.

6. Based on my experience, training, investigation and conversations with other law enforcement officers, I know that at all times relevant to this Complaint, MS-13 constitutes an "enterprise" as defined under Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce. MS-13 constitutes an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise, including enriching the members of MS-13 and preserving the power of the gang through fear, violence, and intimidation. MS-13 has been named as the enterprise in various racketeering and racketeering-related cases throughout the United States.

7. Based on my experience, training, investigation and conversations with other law enforcement officers, I know that at all times relevant to this Complaint, MS-13 has engaged in "racketeering activity," including acts involving murder, attempted murder, narcotics trafficking, and extortion, as defined under Title 18, United States Code, Sections 1959(b)(1) and 1961(1). Members of MS-13 violently clash with members of rival gangs not only over control of drug territory or extortion victims, but also over gang pride. Indeed, based on conversations with other law enforcement officers with whom I have spoken, a member of MS-13 is expected to attack, or aid in the attack, of a member (or suspected member) of a rival gang whenever the opportunity arises. Failure to assist a fellow MS-13 member in an attack is considered cowardice and will result in loss of standing within the gang or even punishment by the gang. In contrast, greater respect is given to members who engage in more frequent and more audacious acts of violence against rivals (real or perceived), as well as to those who assist their fellows in attacks.

8. Based on my experience, training, investigation, and conversations with other law enforcement officers, I know that in San Francisco, the 20th Street Clique is allied with the Sureño gang (which is generally composed of individuals of Hispanic descent from Southern California), and the principal rival to the 20th Street Clique is the Norteños gang. Many violent incidents have occurred based on nothing more than an encounter between a Norteño and a member of the 20th Street Clique. Indeed, innocent bystanders who were mistaken for gang members have been attacked by members of MS-13 and the Norteños.

### III. MARTINEZ'S VIOLENT CRIMES IN AID OF RACKETEERING

9.  I learned the following from reviewing reports of the San Francisco Police Department (the "SFPD"), interviewing witnesses, and speaking with a member of the SFPD's Gang Task Force who has been investigating MS-13, Norteños, and other gangs for more than a decade:

    a.  During the afternoon of on or about June 19, 2008, SFPD Officers responded to a report of a stabbing in the vicinity of 21st and Mission Streets in San Francisco. Upon arriving at the scene, the responding officers learned that a stabbing had occurred and that the victim ("Victim-1") was on his way to the hospital. After speaking with witnesses at the scene, one of the responding officers traveled to San Francisco General Hospital where he spoke with the sister of Victim-1 ("Victim-2"). According to the responding officer's report, Victim-2 told the officer the following:

        i.   Victim-2 was driving her Toyota northbound on Mission Street between 22nd Street and 21st Street when she noticed an unknown Hispanic male (UHM 1) wearing a white baseball hat, a white shirt and blue jeans running behind her vehicle. At the time, Victim-1 was riding in the front passenger seat and her son (age 4) was riding in the rear passenger seat.
        ii.  Victim-2 saw UHM 1 run to two other unknown Hispanic males (UHM 2 and UHM 3) who were standing on Mission Street.
        iii. Victim-2 had to stop her car on northbound Mission Street at the intersection of 21st Street.
        iv.  Victim-2 saw UHM 2 run up to the open passenger side window of her vehicle and begin punching Victim-1.
        v.   In an attempt to get away, Victim-2 made a right turn on to 21st Street and crashed her car into another car. UHM 1, UHM 2, and UHM 3 then ran up to the passenger side of Victim-2's car and attempted to pull Victim-1 out of the car.
        vi.  Victim-2 got out of her car and started yelling at UHM 1, UHM 2 and UHM 3, who left the scene in different directions. At this point, Victim-2 noticed that Victim-1 was bleeding.
        vii. Victim-2 asked the driver of the car she hit to drive her, her son, and Victim-1 to the hospital.

    b.  The responding officer's report also stated that a witness near the location of the attack heard someone in a group of three males on the street say, "Let's go stab him" prior to the attack. The witness then saw the three males run north bound on

3

       Mission Street, after which the witness heard a car crash. The witness then saw an unknown female chasing the three males and an unknown male get out of a Toyota. The unknown male was bleeding from his stomach.

   c. A SFPD Gang Inspector (the "Inspector") confirmed with San Francisco General Hospital that Victim-1 was admitted the afternoon of on or about June 19, 2008 and was treated for serious stab wounds to his abdomen. Victim-1's initial prognosis was uncertain, but Victim-1's condition has since improved.

   d. Several video cameras were mounted in the vicinity of 21st and Mission Streets where the attack occurred. The Inspector and a Sergeant assigned to the SFPD Gang Task Force (the "Sergeant") reviewed video from these cameras on or about June 19, 2008. From what the Inspector could see on the video, the Inspector believed that three men who appeared to be running on the sidewalk of Mission Street from 22nd Street towards 21st Street looked similar to members of the 20th Street MS clique with whom he was familiar. More specifically, the Inspector believed that the three men were Douglas Largaespada, Jose Alvarez,[1] and **ABRAHAM MARTINEZ**. The Inspector has known **MARTINEZ** in particular for several years, and knows him by the street name "Goofy." According to the Inspector, in the video that was reviewed, **MARTINEZ** had long hair and was wearing a white T-shirt, blue jeans and a two-toned white and black hat.

10. On or about July 1, 2008, another ICE agent and I spoke with Victim-2. Among other things, Victim-2 advised that on the day of the attack on Victim-1, while on Mission Street between 22nd Street and 21st Street, Victim-2 saw a man in a white shirt and a white hat with long hair "mugging" (i.e., staring at) Victim-1. While stopped at a red light, Victim-2 saw this man running and initially thought that he was running to her car. Victim-2 instead saw him run to two other men standing at a corner and appear to speak to them. Victim-2 then saw in her rearview mirror the three men running towards her car. The light was still red so she turned right on 21st Street. Victim-2 advised that she began driving fast and made the right turn to get away because she was scared for her life, for her brother's life, and for her son's life.

11. Victim-2 further advised that after her car crashed, the three men began pulling on her brother, fighting him. Victim-2 did not know that the attackers had a knife. Victim-2 advised that there were three attackers and all three punched and pulled Victim-1 through

---

[1] Largaespada and Alvarado have both been charged in criminal complaints with violations of Title 18, United States Code, Sections 1959(a)(3) and (5), and 2, based on the attack described herein. Both are presently in custody.

4

the open passenger side window of the car. Victim-2 advised that man in the white shirt and white hat with long hair[2] whom she first saw hit her brother the most. Victim-2 advised that the other two attackers had short hair.

12. On or about July 1, 2008, another ICE agent and I spoke with Victim-1. Among other things, Victim-1 stated that only one of his attackers had long hair and that the man who stabbed him was the man with long hair.[3] On or about July 10, 2008, I again interviewed Victim-1, who clarified that he believed that the man who stabbed him was the man with long hair because he saw blood on the long-haired man's shirt when the long-haired man ran from the car. Victim-1 did not see the object that stabbed him.

13. On or about July 9, 2008, **ABRAHAM MARTINEZ**, a/k/a "Goofy," was arrested by the SFPD. I have reviewed a copy of the SFPD arrest report, which indicated that prior to interviewing **MARTINEZ**, the Sergeant Mirandized **MARTINEZ**, who subsequently acknowledged that he understood his rights and then stated, among other things, the following:

   a. **MARTINEZ** admitted to being an MS, 20th Street, Sureno gang member for about eight years.

   b. **MARTINEZ** stated that he saw the victims' car heading north on Mission Street and said that they were yelling derogatory slurs at him, Douglas Largaespada, Jose Alvarado, and another male. **MARTINEZ** said he heard the victims yelling "scraps" and other things. Based on my experience and training, I know that "scraps" is an insult used by Norteño gang members to refer to a member of MS-13 or a Sureno gang member. **MARTINEZ** advised that he thought to himself that Victim-2 was a "busta," which I know from my experience and training is a derogatory term used by MS-13 members to describe a Norteño gang member.

   c. Although **MARTINEZ** claimed that he did not know that Victim-1 was stabbed, he admitted that he ran with Largaespada, Alvarado, and the other male toward the victims' car when the car crashed on the corner.

---

[2] On or about June 20, 2008, the Inspector showed Victim-2 a photo line-up that included a photo of **MARTINEZ**. Victim-2 was unable to identify **MARTINEZ** from that photo line-up.

[3] On or about June 20, 2008, the Inspector showed Victim-1 a photo line-up that included a photo of **MARTINEZ**. Victim-1 was unable to identify **MARTINEZ** from that photo line-up.

5

14. I have spoken with the Sergeant who questioned **MARTINEZ** following **MARTINEZ**'s arrest on or about June 9, 2008. The Sergeant advised me that **MARTINEZ** had long hair at the time of his arrest.

15. Based on the foregoing, I hereby assert that probable cause exists to believe that **ABARAHAM MARTINEZ**, a/k/a "Goofy," is in violation of Title 18, United States Code, Sections 1959(a)(3) and (5), and 2, specifically, Assault with a Dangerous Weapon in Aid of Racketeering, and Attempted Murder in Aid of Racketeering. In accordance with MS-13 rules, **MARTINEZ**, a known member of MS-13, participated with two other known members of MS-13 in a concerted attack against Victim-1, and as a result, inflicted life-threatening stab wounds upon Victim-1.

BRIAN L. GINN
Special Agent
Immigration and Customs Enforcement

Sworn to and subscribed before me
this 11th day of August, 2008

HONORABLE JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

6

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☑ COMPLAINT  ☐ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA

### OFFENSE CHARGED

Ct. 1-Assault with Dangerous Weapon in Aid of Racketeering, 18 U.S.C. Secs. 1959(a)(3) and 2

Ct. 2-Attempted Murder in Aid of Racketeering, 18 U.S.C. Secs. 1959(a)(5) and 2

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

DEFENDANT - U.S.

▶ ABRAHAM MARTINEZ

DISTRICT COURT NUMBER

PENALTY:
Ct. 1 - 20 yrs impris; 5 yrs sup rel; $250,000 or 2x gain/loss fine; $100 special assessment   Ct. 2 - 10 yrs impris; 3 yrs sup rel; $250,000 or 2x gain/loss fine; $100 special assessment

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
ICE - Brian L. Ginn

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y  ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

Name and Office of Person Furnishing Information on THIS FORM
Joseph P. Russoniello
☑ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y
(if assigned)

### DEFENDANT

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☑ Awaiting trial on other charges   ☐ Fed'l  ☑ State

If answer to (6) is "Yes", show name of institution
San Francisco County Jail

Has detainer been filed?   ☐ Yes  ☑ No   If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☑ WARRANT   Bail Amount: No bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:

Before Judge:

Comments: